UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                         |   |                                  |
|-----------------------------------------|---|----------------------------------|
| ONEBEACON AMERICA INSURANCE COMPANY,    | ) |                                  |
|                                         | ) |                                  |
| Petitioner,                             | ) |                                  |
|                                         | ) |                                  |
| v.                                      | ) | CIVIL ACTION NO. 09-CV-11495-PBS |
|                                         | ) |                                  |
| SWISS REINSURANCE AMERICA CORPORATION,  | ) |                                  |
|                                         | ) |                                  |
| Respondent.                             | ) |                                  |

SARIS, U.S.D.J.

**MEMORANDUM AND ORDER**

December 23, 2010

**I. Introduction**

OneBeacon America Insurance Company ("OneBeacon") files this motion to vacate the arbitration award in favor of Swiss Reinsurance America Corporation ("Swiss Re") under section 10(a)(3) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1. Swiss Re has filed a motion to confirm. OneBeacon contends that the arbitrators were guilty of misconduct for refusing to permit necessary discovery and hear certain evidence. After a hearing and consideration of the parties' briefs, the court **ALLOWS** Swiss Re's motion to confirm, and **DENIES** the motion to vacate.

## II. Background Facts

This dispute is governed by a Multiple Line Reinsurance Treaty Contract (the "Treaty"), which is an excess loss reinsurance contract in effect between 1966 and 1980. The reinsurer, Swiss Re, is not obligated to pay any portion of a loss under the Treaty until the insurer, OneBeacon, pays a retention. Thus, if a OneBeacon policy holder's damages do not equal or exceed the retention amount, Swiss Re is not obligated to pay. The Treaty includes an arbitration clause.

The Treaty applies by its terms on a per occurrence basis to non-products claims. The term "occurrence," for the purposes of non-products bodily injury liability, is described in Section 5(d) of the Treaty as "injuries to one or more than one person resulting from infection, contagion, poisoning or contamination proceeding from or traceable to the same causative agency."

The claims at issue in the arbitration arise from non-products losses that OneBeacon paid, or will pay, on behalf of six policyholders: ALCOA; Avondale Shipyards; Dee Engineering; J.T. Thorpe; Plant Insulation; and Southern Silica (collectively, the "Policyholders"). The Policyholders are all liable to various plaintiffs for damages.

The issue at arbitration was whether the non-products claims asserted against each of the Policyholders could be aggregated by OneBeacon into a single occurrence in one year under the Treaty,

so as to exceed the "per occurrence" retention.  If OneBeacon can aggregate the claims as a single occurrence, Swiss Re is liable to OneBeacon for approximately $9 million in damages.

The Panel rejected OneBeacon's construction of "occurrence," holding that the presence of asbestos in multiple locations does not constitute the "same causative agency," and that therefore OneBeacon could not aggregate its claims under Section 5(d) of the Treaty.  As such, Swiss Re was found not liable to OneBeacon.[1]

### III. Standard of Review

A federal court may vacate an arbitral award "when there was misconduct by the arbitrator, when the arbitrator exceeded the scope of her authority, or when the award was made in manifest disregard of the law."  JCI Commc'ns, Inc. v. IBEW, Local 103, 324 F.3d 42, 48 (1st Cir. 2003).  For a petitioner to demonstrate that an arbitrator acted with "manifest disregard of the law," he

---

[1] The Arbitration Panel ruled in relevant part as follows:
(1) The Panel rejects OneBeacon's aggregation under Section 5(d) of the MLRT of an insured's asbestos and silica losses on the basis that the mere presence of asbestos (or silica) is the "same causative agency."
(2) Accordingly, [Swiss Re] is not obligated to pay the aggregated asbestos and silica non-products bodily injury losses under Section 5(d) of the MLRT in the manner ceded by OneBeacon.  Final Decision 2, Exhibit A to OneBeacon's Memorandum of Law in Support of Verified Application to Vacate an Arbitration Award ("OneBeacon's Mem.").

must show that the arbitration award was: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Ramos-Santiago v. UPS, 524 F.3d 120, 124 (1st Cir. 2008). Vacatur is appropriate only when the exclusion of relevant evidence "so affects the rights of a party that it may be said that he was deprived of a fair hearing." National Cas. Co. v. First State Ins., 430 F.3d 492, 497 (1st Cir. 2005) (quoting Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985) (citation omitted)).

The standard for reviewing an arbitration decision is extremely deferential to the arbitrator, embodying "one of the narrowest standards of judicial review in all of American jurisprudence." UMass Memorial Medical Center, Inc. v. United Food & Commercial Workers Union, 527 F.3d 1, 4 (1st Cir. 2008); see also Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 130 S.Ct. 1758, 1766 (2010) ("Petitioners contend that the decision of the arbitration panel must be vacated, but in order to obtain that relief, they must clear a high hurdle. It is not enough for petitioners to show that the panel committed an error- or even a serious error."). Courts have found arbitral awards "nearly impervious to judicial oversight," Teamsters Local Union

No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000), because both parties "have bargained for the arbitrator's construction of their agreement." Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17, 531 U.S. 57, 62 (2000) (internal quotation marks and citation omitted). Further,"[t]hat a reviewing court is convinced that the arbitrators committed error – even serious error – does not justify setting aside the arbitral decision. This remains true whether the arbitrator's apparent error concerns a matter of law or a matter of fact." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006) (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). A reviewing court does not sit as a court of appeals to hear claims of factual or legal error by an arbitrator or to consider the merits of an award. Misco, 484 U.S. at 38.

While an arbitrator may not ignore the plain reading of a contract, a court cannot vacate the award "as long as the arbitrator is even arguably construing or applying the contract[.]" Id. Nor is a reviewing court authorized to reject an arbitrator's honest judgment as to the appropriate remedy, if the contract gives him the authority to decide that question. Id. The Court merely reviews the decision to ensure there is no misconduct, corruption or fraud on behalf of the arbitrator, and that the arbitrator has not exceeded his or her authority. 9 U.S.C. § 10 (2008).

Arbitration panels have significant discretion in admitting evidence and conducting discovery proceedings. See Hunt v. Mobile Oil Corp., 654 F. Supp. 1487, 1512 (S.D.N.Y. 1987) ("The [FAA] cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award.") (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir.), cert. denied, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)); Hunt, 654 F. Supp. at 1513 ("An arbitration hearing is not a court of law. When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial. One of these accoutrements is the right to pretrial discovery.") (quoting Burton v. Bush, 614 F.2d 389, 390 (4th Cir. 1980)); Stolt-Nielsen, 130 S.Ct. at 1775 ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."). Because of this evidentiary and procedural discretion, in order to overturn an arbitration award, a petitioner must prove that there was "neglectful disregard" for the evidence by the arbitrator, thus making the party's right to be heard "grossly and totally blocked." Cobec Brazilian Trading & Warehousing Corp. of U.S. v. Isbrandtsen, 524 F. Supp. 7, 10

(S.D.N.Y. 1980). It is the petitioner who bears the burden of proving the panel's misconduct. Stolt-Nielsen, 130 S.Ct. at 1758; Local Union No. 251 v. Narragansett Imp. Co., 503 F.2d 309, 312 (1st Cir. 1974) ("The burden is on the party challenging the arbitral award to establish substantially more than an erroneous conclusion of law or fact.")

## IV. Discussion

### A. Discovery

OneBeacon first argues that the Panel denied it a full and fair hearing by limiting discovery and refusing to allow OneBeacon to develop evidence that would prove that its interpretation of the contract is consistent with industry custom. OneBeacon sought to take depositions from current and former Swiss Re employees, insurance and reinsurance agents, and others in order to prove that the reinsurance industry custom was to aggregate non-product liability claims into a single occurrence so as to reach the reinsurer's retainer. OneBeacon claimed the discovery was necessary because industry members often use technical vocabulary and shorthand when entering agreements, which permit parties to leave their intentions unexpressed. The additional discovery, OneBeacon argues, would have established the industry custom and practice of aggregating non-products claims. Swiss Re objected, arguing that depositions

7

were not necessary because the core issue before the panel was contract interpretation.

The Panel did permit discovery on industry custom and practice at the summary disposition phase by requiring the parties to "designate one individual as the person most knowledgeable with respect to industry custom and practice with respect to causative agency/aggregation and course of dealings under the MLRT." Panel Order, July 23, 2008, Ex. H to OneBeacon's Mem. OneBeacon identified six Swiss Re employees as potential deponents, and Swiss Re designated one of those employees, Kevin Coleman, as its most knowledgeable person with regard to industry custom and practice. Mr. Coleman is a claims handler in the Asbestos Pollution and Health Hazard unit at Swiss Re. At his deposition, Mr. Coleman testified that he was unaware of any industry custom or practice with respect to the term "causative agency" as applied to non-products asbestos claims.

OneBeacon argues that this deposition was inadequate for discovery purposes, because Mr. Coleman had no personal knowledge about industry custom and practice for billing asbestos losses, and because he allegedly failed to educate himself on the topic by reference to documents or interviews of other Swiss Re employees. These accusations are belied by Mr. Coleman's testimony. He explained that he spent two full business days reviewing documents with Swiss Re's attorney in anticipation of the deposition, and that his knowledge derived from his ten-plus

8

years of experience in asbestos claims handling, as well as attendance at seminars and other efforts to keep up with industry developments.

That Mr. Coleman was unaware of any industry custom and practice with respect to aggregation of asbestos claims does not necessarily reflect his failure to adequately prepare; more likely, it suggests that there is no such industry custom and practice. Indeed, OneBeacon's own corporate designee, Thomas Ryan, testified that <u>he</u> was unaware of an industry custom and practice to pay asbestos non-products claims on an aggregated basis. In light of the consistency of both sides' testimony, the Panel ruled as follows:

> The Panel agrees with the deposition testimony of Mr. Coleman and Mr. Ryan and finds that there is no course of dealing between these parties or any industry custom and practice with respect to the cession of asbestos non-products bodily injury claims. Moreover, the panel rejects any attempt to conflate, for the purpose of establishing such course of dealing or industry custom and practice, asbestos products bodily injury claims and asbestos non-products bodily injury claims. Accordingly, having ruled that no such course of dealing or custom and practice exists, the Panel will not permit any additional discovery on these topics.

Panel Order ¶9, Oct. 18, 2008, Ex. I to OneBeacon's Mem.

The Panel's decision to foreclose additional discovery on the issue of industry custom and practice did not deprive OneBeacon of a full and fair hearing. The evidence that informed the Panel's decision demonstrates that further discovery on the subject would have been little more than a fishing expedition.

9

In addition to the two deponents' consistent testimony, several articles that OneBeacon offered as evidence also tend to support Swiss Re's position. For example, Robert Hall states:

> It is our view that injuries to thousands of people resulting from the use or exposure to a variety of products under a variety of circumstances and occurring over a number of years, cannot reasonably be said to constitute one accident within the meaning of a typical excess of loss contract. . . . An . . . "occurrence" has always been thought of as a sudden and unexpected happening, limited in time and space. Yet, asbestos injuries to different persons occurring at different times and places . . . plainly do not fall within that meaning. . . . Where the effects of a single cause take place almost simultaneously and in the same place, it is a single accident . . . however, where claims arise under a variety of circumstances over many years, they cannot reasonably be said to constitute one ['occurrence'].

Robert F. Hall, <u>Asbestos Claims: What is One Occurrence Under Reinsurance Contracts?</u>, in Publications of the Cologne Re.: Asbestos-Related Claims in the USA-Impact on the Reinsurance Industry at 102-03 (1996). OneBeacon's own publicly-filed Form 10-K also states that non-products claims are generally not subject to aggregation.

The Panel's decision to limit discovery to areas of material dispute does not rise to the level of misconduct. The Panel sought to clarify a contract term efficiently by having each party designate one knowledgeable deponent on the subject. The Panel's actions did not show "neglectful disregard" for the evidence, nor did they "grossly and totally block[]" OneBeacon's right to be heard. <u>Cobec</u>, 524 F. Supp. at 10. The Panel did

limit discovery to one witness per side; however, this decision not to hear more extensive testimony on industry custom and practice with respect to asbestos losses was within the Panel's broad procedural discretion.  See Hunt, 654 F. Supp. at 1513.

**B. Evidence Admitted at Hearings**

OneBeacon further argues that the Panel unduly limited the testimony of both its fact and expert witnesses.  The Panel limited the testimony of OneBeacon's fact witness, Clem Dwyer, to only what he saw, did, or heard, and did not permit him to testify about his understanding of the contract.  The Panel also limited the testimony of OneBeacon's expert witness, Judy Harnadek, precluding her from testifying concerning underwriting intent and industry custom and practice.  In the place of direct expert testimony, the Panel reviewed and accepted into evidence the written reports of both Ms. Harnadek and Swiss Re's expert. OneBeacon claims that Dwyer should have been entitled to testify about his knowledge of the contract, including how it was intended to be applied, how it actually was applied, and how other reinsurers applied similar contract language.  OneBeacon also argues that the Panel acted improperly in refusing to allow direct examination of Ms. Harnadek.

The Panel's actions do not rise to the level of misconduct, as there is nothing in the record to suggest that the Panel blocked OneBeacon's right to a full and fair hearing.  Both of

11

OneBeacon's witnesses were allowed to present the evidence they were competent to present. Mr. Dwyer, whom OneBeacon introduced as a fact witness rather than an expert witness, was allowed to testify as to matters of fact (that is, what he saw and heard), but not as to his opinions on the state of the industry. Similarly, Ms. Harnadek was allowed to testify on her experience with a similar treaty, but not on underwriting intent, an area in which she admitted to having no expertise.

The Panel held a three-day hearing with extensive testimony from both sides. This is a far cry from the circumstances in the cases OneBeacon relies on, Hoteles Condado Beach v. Union de Tronquistas, 763 F.2d 34 (1st Cir. 1985) and Westvaco Corp. v. Local 579, United Paperworkers, No. 90-30091, 1992 WL 121372 (D. Mass. 1992). In those cases, the arbitration panels precluded one side from presenting any evidence at all. See Hoteles, 763 F.2d at 40 (stating that "no other evidence was available to substantiate or to refute" one side's claims); Westvaco, 1992 WL at *8 (finding that arbitrator's application of collateral estoppel prevented one side from presenting its case at all). OneBeacon, by contrast, had plentiful opportunities to present evidence, and what limitations the Panel did place on witness testimony were entirely within the bounds of its discretion.

## VI. Conclusion

Swiss Re's motion to confirm the arbitration award is

**ALLOWED**.  OneBeacon's application to vacate the arbitration award is **DENIED**.

                                    /s/ PATTI B. SARIS
                                    PATTI B. SARIS
                                    UNITED STATES DISTRICT JUDGE